J-A28037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.S.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.N.L., | |
| Appellant | No. 1577 EDA 2016 |

Appeal from the Order Entered April 22, 2016
in the Court of Common Pleas of Montgomery County
Civil Division at No.: 2015-20803

| | |
|---|---|
| R.S.L., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.N.L., | |
| Appellant | No. 1583 EDA 2016 |

Appeal from the Order Entered May 3, 2016
in the Court of Common Pleas of Montgomery County
Civil Division at Nos.: 2015-20803
PACSES #686115415

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 05, 2017**

---

[*] Retired Senior Judge assigned to the Superior Court.

In these consolidated appeals, C.N.L. (Father) appeals the orders of the Court of Common Pleas of Montgomery County, entered April 22, 2016, and May 3, 2016, in custody and support, respectively. We affirm.

Mother and Father married on November 28, 1998; they have four children: G.C.L., born in December of 1999; T.A.L., born in August of 2003; B.X.L., born in February of 2006; and S.P.L., born in July of 2008 (Children).

Mother filed a complaint in divorce on July 22, 2015, which included a claim for shared legal custody and primary physical custody of the Children. Mother filed an emergency petition for special relief on October 2, 2015, in which she requested exclusive possession of the marital residence. The trial court granted Mother's petition in an order entered October 9, 2015.

In the interim, Father filed a complaint for support, and a support conference officer held a hearing on that complaint on October 22, 2015. The conference officer determined that Father's net earning capacity was $1,647.81 per month, and that Mother's was $5,918.81 per month. The Officer ordered Mother to pay Father the sum of $1,874.05 per month in child support and alimony *pendente lite* (APL) effective October 10, 2015. Mother filed a timely exception to this determination on November 9, 2015.

The parties participated in a custody conciliation conference on November 13, 2015. Mother sought shared legal custody and primary physical custody of the Children; Father sought shared legal and physical custody of the Children. The matter was not resolved at the conference and was listed for trial. The trial court heard the matter on April 6 and 21, 2016.

- 2 -

In the custody order entered April 22, 2016, the trial court ordered that Mother and Father were to share legal custody and that Mother was to have primary physical custody of the Children. Father was to have partial physical custody on alternating weekends and at least two evenings each week. The order provided further that the parties would share physical custody equally once Father obtained suitable housing.

Also on April 22, 2016, in response to Mother's exceptions to the Master's recommendation, and after a two-day trial, the trial court determined Mother's net income per month to be $5,919.00, and Father's to be $1,648.00. The trial court ordered Mother to pay the sum of $2,093.00 per month to Father, $1,159.00 in child support and $934.00 in APL, until Father secured appropriate housing.

Mother filed a motion for reconsideration of the April 22, 2016 support order on April 27, 2016. In her motion, Mother asked the trial court to vacate the child support of $1,159.00 because Father had yet to obtain suitable housing and the Children were living with her full time. The trial court granted Mother's motion on May 3, 2016, and modified the order to require Father to pay Mother $567.00 per month until he obtained suitable housing. The remainder of the April 22, 2016 order remained in full force and effect.

Father filed an emergency motion for reconsideration of the trial court's May 3, 2016 order on May 5, 2016. The trial court did not rule on that motion.

On May 20, 2016, Father filed timely notices of appeal and concise statements of errors complained of on appeal from the trial court's custody order of April 22, 2016, and its support order of May 3, 2016. *See* Pa.R.A.P. 1925(a)(2)(i).[1] This Court consolidated the appeals by order entered June 30, 2016.

Father raises the following questions on appeal:

A. Custody

1. Did the trial court abuse its discretion and/or commit an error of law in requiring Father, the party with the substantially lower income, to obtain housing with a minimum of three (3) bedrooms in order to obtain shared physical custody of the Children?

2. Did the trial court abuse its discretion and/or commit an error of law in awarding Mother primary physical custody until Father secures housing with a minimum of three (3) bedrooms where the evidence showed Father was an active and involved parent, was able and willing to care for the Children, where there was no evidence that the Children were languishing under Father's care, and without considering the psychological and emotional impact on the Children resulting from a change in physical custody?

3. Did the trial court abuse its discretion and/or commit an error of law in awarding Mother primary physical custody based upon economic factors and/or in weighing economic factors above other factors?

4. Did the trial court abuse its discretion and/or commit an error of law in awarding Mother primary physical custody where the evidence showed that the marital home where Mother resides with the Children was to be sold in June 2016, and Mother had not secured nor made arrangements for new and future housing?

---

[1] The trial court entered an opinion on June 23, 2016. *See* Pa.R.A.P. 1925(a)(2)(ii).

5. Did the trial court abuse its discretion and/or commit an error of law in concluding that Mother was the parent more likely to promote a relationship with the other parent where the evidence showed that Mother had filed two unsuccessful PFAs against Father, had initiated seven (7) police reports against Father, and had attempted to have Father involuntarily committed?

6. Did the trial court abuse its discretion or commit an error of law in refusing to grant Father a right of first refusal where the evidence showed Mother worked long overnight shifts as a nurse and Father was willing and able to care for the Children?

7. Does the custody order violate Father's right of equal protection because it treats Father, a divorced or single person, different than married persons because it requires Father to obtain housing with a minimum of three (3) bedrooms in order to share physical custody?

B. Support

1. Did the trial court abuse its discretion and/or commit an error of law in granting reconsideration and ordering Father, the party with the substantially lower income, to pay 34% of his net income to Mother for child support?

2. Did the trial court abuse its discretion and/or commit an error of law in failing to deviate or consider a deviation in Father's favor so as to promote the best interests of the Children and effectuate the intent of the custody order?

3. Is the support order punitive and prejudicial to Father and/or in violation of Father's rights [sic] to equal protection?

4. Did the trial court abuse its discretion and/or commit an error of law in granting reconsideration and ordering Father, the party with the substantially lower income, to pay child support to Mother where Mother never requested she receive child support?

5. Is the support order contrary to the Pennsylvania Rules of Civil Procedure on child support?

(Father's Brief, at 10-11) (unnecessary capitalization and emphases omitted).

Our standard of review in matters regarding support is:

In reviewing orders granting, denying or modifying support, this Court is limited to considering whether, based on clear and convincing evidence, the trial court abused its discretion. An abuse of discretion requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice, or partiality.

**Simmons v. Simmons**, 723 A.2d 221, 222 (Pa. Super. 1998) (citations omitted).

Our standard of review in matters regarding custody is:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

**C.R.F., III v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have examined the opinion entered by the trial court on June 23, 2016, in light of the record in this matter, and are satisfied that it is a complete and correct analysis of the issues in this case. Accordingly, we affirm the orders of the trial court, on the basis of the trial court's opinion.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2017

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

**████████████**

Appellee/Mother

vs.

**████████████**

Appellant/Father

: Trial Court No.: 2015-20803
:
: 1581 EDA 2016
:
: 1577 EDA 2016
:
: 1583 EDA 2016
:
: PACES No.: 686115415

## OPINION

FERMAN, J.                              June 17, 2016

### INTRODUCTION

Appellant, ████████████ ("Father") appeals to the Superior Court of Pennsylvania from this Court's Support Orders dated April 22, 2016 and May 2, 2016, as well as this Court's Custody Order dated April 22, 2016.

### FACTS AND PROCEDURAL HISTORY

The parties were married on November 28, 1998. Mother and Father are the natural parents of four (4) children: ████████████ (DOB: December █ 1999); ████████ (DOB: August █ 2003); ████████████ (DOB: February █ 2006); and ████████████ (DOB: July █ 2008).

Mother filed a Complaint in Divorce on July 22, 2015, which included claims for Equitable Distribution of Marital Property, Attorney's Fees and a claim for shared legal custody and primary physical custody regarding the parties' four children.

2015-20803-0074  6/23/2016 3:05 PM  # 10843223
Opinion
Rcpt#Z2786651 Fee:S0.00
Mark Levy - MontCo Prothonotary

On October 2, 2015, Mother filed an Emergency Petition for Special Relief requesting Exclusive Possession of the Marital Residence. In an Order dated October 9, 2015, Judge Weilheimer granted Mother's Emergency Petition for Special Relief and granted Mother exclusive possession of the marital residence. The parties separated on October 9, 2015.

On October 22, 2015, in response to Father's Complaint for Support (filed July 21, 2015), a hearing was held before a Montgomery County Support Conference Officer. The Officer determined that Father's net earning capacity was $1,647.81 per month, and Mother's net earning capacity was $5,918.81 per month. The Officer ordered, effective October 10, 2015, that Mother pay Father $1,874.05 per month in child support and APL. Mother filed a timely exception to this recommendation on November 9, 2015.

The parties took part in a Custody Conciliation Conference on November 13, 2015. At issue was Count V in Mother's Divorce Complaint in which she sought shared legal custody and primary physical custody of the children. Father was seeking shared legal and physical custody of the children. Mother expressed concern about available space in Father's one-bedroom home. After conciliation, the matter was listed for court. Trial was held on April 6, 2016, and April 21, 2016.

In its Custody Order entered April 22, 2016, after a two-day trial, this Court ordered that Mother and Father shall share legal custody and that Mother shall be granted primary physical custody. Father was granted partial physical custody on alternating weekends and at least two evenings weekly.

Once Father obtained suitable housing, physical custody was to be split 50/50 between the parties. Additionally, in response to Mother's Emergency Petition for Special Relief filed on October 2, 2015, this Court granted Exclusive Possession of the marital residence to Mother.

On April 22, 2016, in response to Mother's Exceptions to the Recommendation of the Support Master, and after a two-day trial, this Court determined Mother's net income per month was $5,919.00 and Father's was $1,648.00. Until Father obtained suitable housing, Mother was ordered to pay $2,093.00 per month to Father ($1,159.00 per month in child support and $934.00 per month in APL).

On April 27, 2016, Mother filed a Motion for Reconsideration regarding the Support Order entered by this Court on April 22, 2016. Mother requested this Court vacate the Support Order related to child support ($1,159.00) because Father had yet to obtain suitable housing and the four children were living with her full time.

On May 2, 2016, upon consideration of Mother's Motion for Reconsideration filed April 27, 2016, this Court granted said Motion. The April 22, 2016 Support Order was modified and Father was ordered to pay Mother $567.00 per month until he obtained suitable housing pursuant to the previous orders. The rest of the April 22, 2016 Order remained in full force and effect.

On May 5, 2016, Father, through his attorney, filed an Emergency Motion for Reconsideration of the Court's Orders Entered on April 22, 2016, in

Support and in Custody and Entered on May 2, 2016, in Support. This Court has not ruled on Father's Emergency Motion for Reconsideration.

On May 23, 2016, Father filed a timely Notice of Appeal from the Custody Order Entered on April 22, 2016; Notice of Appeal from the Support Order Entered April 22, 2016; Notice of Appeal from Support Order Entered on May 2, 2016; Concise Statement of Errors Complained of on Appeal from Custody Order Entered April 22, 2016; Concise Statement of Errors Complained of on Appeal from Support Order Entered April 22, 2016; and Concise Statement of Errors Complained of on Appeal from Support Order Entered on May 2, 2016.

### ISSUES

1. Whether this Court abused its discretion when entering the Support Order on April 22, 2016 by failing to deviate or consider a deviation in Father's favor with respect to child support.

2. Whether the Support Order entered May 2, 2016, in response to Mother's Motion for Reconsideration, is punitive and prejudicial, and/or violated Father's rights to equal protection under the law.

3. Whether the Court abused its discretion in granting reconsideration of its April 22, 2016, Support Order, ordering in its May 2, 2016, Order that Father pay child support and obtain housing with a minimum of three (3) bedrooms, and failing to deviate or consider a deviation in Father's favor.

4. Whether the Court abused its discretion when entering its April 22, 2016, Custody Order in ordering Father to obtain housing with a minimum of three (3) bedrooms; basing its decision to award primary custody largely

upon economic factors and/or in heavily weighing economic factors above other factors; in refusing to maintain the status quo of shared physical custody based solely upon Father's housing conditions; in concluding that Mother was the parent to more likely promote a relationship with the other parent; and in refusing to grant Father a right of first refusal.

5. Whether the Court violated Father's right of equal protection under the law by ordering Father to obtain housing in its April 22, 2016, Custody Order.

## DISCUSSION

### 1. THE COURT DID NOT ABUSE ITS DISCRETION IN ENTERING ITS CHILD SUPPORT ORDER ON APRIL 22, 2016 NOR DID THE COURT VIOLATE FATHER'S EQUAL PROTECTION UNDER THE LAW.

In child support cases, "the amount of a support order is largely within the discretion of the trial court, whose judgement should not be disturbed on appeal absent a clear abuse of discretion." Portugal v. Portugal, 798 A.2d 246, 249 (Pa. Super. Ct. 2002) (internal citation omitted). The Superior Court "may only reverse the trial court's determination where the order cannot be sustained on any valid ground." Humphreys v. DeRoss, 737 A.2d 775 (1999)(internal citation omitted). The Superior Court shall not "interfere with the broad discretion afforded the trial court absent an abuse of that discretion or insufficient evidence to sustain the support order." Id.

"An abuse of discretion is not merely an error of judgement; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias, or ill will, discretion

has been abused." <u>Depp v. Holland</u>, 636 A.2d 204, 205-06 (1994). A finding that the "trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground." <u>Portugal</u> at 249.

An award of child support in Pennsylvania is based upon the Child Support Guidelines. "Child and spousal support shall be awarded pursuant to a Statewide guideline as established by general rule by the Supreme Court, so that persons similarly situated shall be treated similarly." 23 Pa.C.S.A. § 4322(a). There is a rebuttable presumption that the amount of an award for support which results from the application of the guidelines is correct. 23 Pa.C.S.A. § 4322(b). "The responsibility for child support rests equally upon both parents..." <u>Opie v. Richart</u>, 598 A.2d 1321, 1322 (1991)(internal citations omitted). "Although support orders may not be punitive or confiscatory, parents may be required to make sacrifices in order to achieve the support goal. <u>Id.</u> at 590.

In the current case, the Court held a two-day trial on April 6, 2016, and April 21, 2016, on Wife's Exceptions in Support filed November 9, 2015. At the conclusion of the trial, the following exchange took place:

> **Court**: On the support petition and the support exceptions, to the extent that my ruling today will require a recalculation of the support guidelines, we will do that. The only other modification that I will make to support is: in the conference master's decision, I don't believe there was an allocation for the children's extracurricular, and I

6

believe that they should be divided in proportion to income; so that will be whatever the percentage turns out to be. It was 78/22, but if there happens to be a different calculation with respect to that, then we'll make that calculation. Other than that, the remaining aspects of the support order beyond the recalculation based on timing at this point will remain the same. Counsel, does that address all of the outstanding issues?

**Ms. Pozniak**: Your Honor, I think that if the support is going to be recalculated, then the spousal support APL would also need to be recalculated under that.

**Court:** That's not something I can do here from the bench, but we will simply recalculate whatever needs to be done, and we'll issue that from chambers.

**Ms. Pozniak:** Thank you, Your Honor.

**Court:** Anything further, Ms. Bobman?

**Ms. Bobman:** Your Honor, you didn't address our request for the deviation on the unreimbursed expenses. When you said that the rest of the order shall remain as Master Coacher recommended, then you're going to allocate that 78 percent/22 percent for unreimbursed medical expenses for ██████████

**Court:** Yes. We'll use the same proportion throughout.

**Ms. Bobman:** Thank you.

N.T. April 21, 2016, at 21-23.

Based on the Pennsylvania Child Support Guidelines, this Court entered a Support Order on April 22, 2016. At trial, the parties stipulated to the parties' incomes. Mother's net income per month was $5,919.00, and Father's net income per month was $1,648.00. Pursuant to Rule 1910.16-4, this Court determined that the total combined monthly net income of the parties was $7,567.00. Pursuant to Rules 1910.16-3 and 1910.16-4, the basic support obligation of the parties combined was $2,191.00.

Next, the Court divided the parties' net monthly income from the combined total monthly net income and multiplied by 100 pursuant to Rule 1910.16-4, and determined that Mother's share of combined income was 78.22% and Father's share of combined income was 21.78%. Based upon the parties' shares of combined income, the preliminary monthly share of child support before adjustments for Mother was $1,714.00 and for Father $477.00. Therefore, based upon the aforementioned guideline calculations, this Court ordered Wife to pay $1,159.00 per month in child support to Father (after Rule 1910.164(c)(1) and 1910.16-6(b) deductions) and $934.00 per month in *Alimony Pendente Lite* to Father for a total monthly payment of $2,093.00.

Wife filed a Motion for Reconsideration of the April 22, 2016, Support Order and the Court again ran the support guidelines using the Family Law Software. Based upon the guidelines and Father's partial physical custody schedule, the Court reconsidered its Support Order entered April 22, 2016 and

ordered Father to pay $567.00 per month to Mother in child support, which includes $90.00 towards the health insurance premium, until the parties' physical custody schedule reverted back to a 50/50 custody schedule upon Father obtaining suitable housing. The Court used the same net monthly incomes as stipulated to at trial. The only new factor the Court considered was Father's physical custody schedule. There was no evidence presented at trial other than the parties' incomes, health insurance premiums, and the children's extracurricular activities for the court to analyze in determining the support obligation of the parties. Moreover, the Court determined that it was in the best interest of the children to terminate APL until the physical custody schedule reverted back to 50/50. If the Court ordered Mother to pay Father APL, Father would have been obligated to pay $1,012 per month in child support to Mother because the APL would be counted as income for Father, thus, increasing his child support obligation pursuant to Rule 1910.16-4(e).

The Pennsylvania Child Support Guidelines are based on the Income Shares Model. Pa.R.C.P. 1910.16-1. "The Income Shares Model is based upon the concept that the child of separated, divorced or never-married parents should receive the same proportion of parental income that she or he would have received if the parents lived together." Pa.R.C.P. 1910.16-1. The basic support amounts reflected in the schedule in Rule 1910.16-3 represent average marginal expenditures. Pa.R.C.P. 1910.16-1. The guidelines place an emphasis on the net incomes and earning capacities of the parties, with allowable deviations from unusual needs, extraordinary expenses, and other factors.

Pa.R.C.P. 1910.16-1. The trial court, in deciding whether to deviate from the amount of support determined by the guidelines, shall consider the nine (9) factors enumerated at Pa.R.C.P. 1910.16-5.

Based on the Income Shares Model, if Father and Mother were currently living together and not going through a divorce, the guidelines assume Father would at a minimum be contributing $477.00 per month towards supporting his children, in theory, which is his monthly share of the combined income. Although the Court is allowed to deviate from the guidelines, the Court is not required to deviate from the guidelines – even when requested – because the support guidelines are presumed to be correct. Pa.C.S.A. § 4322(b).

Additionally, at no time during the trial was evidence presented regarding unusual needs, extraordinary expenses, or other factors enumerated in Rule 1910.16-1 by Father. This Court in no way was punishing Father. This Court was doing what was in the best interest of the children, which resulted in a substantial change in custody and the guideline calculations. The Court understands that it may be difficult for Father to make the child support payments; however, Mother has primary custody of the children and is already paying the majority of expenses. Thus, while it may be difficult for Father and sacrifices may have to be made, it is not impossible and is in no way punitive because Father is still over the Self-Support Reserve of $867.00 per month. See, Rule 1910.16-2.

Based on the aforementioned reasons, this Court did not abuse its discretion or violate Father's Equal Protection under the law in ordering Father to pay child support to Mother until Father obtains 50/50 custody again.

## 2. THE COURT DID NOT ABUSE ITS DISCRETION IN GRANTING RECONSIDERATION OF ITS APRIL 22, 2016, CHILD SUPPORT ORDER.

"A motion for reconsideration is addressed to the sound discretion of the trial court, and thus the appellate court will not disturb the trial court's grant of reconsideration absent an abuse of discretion or error of law." Belleville v. David Cutler Group, 118 A.3d 1184 (Pa. Commw. Ct. 2015). "The standard of review of a motion for reconsideration is limited to whether the trial court manifestly abused its discretion or committed an error of law." Id. (internal citations omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Id.

As previously stated, this Court granted reconsideration after calculating the parties' incomes through the support guidelines with the only new factor being Father's physical custody schedule.

## 3. THE COURT DID NOT ABUSE ITS DISCRETION IN ENTERING ITS CUSTODY ORDER ON APRIL 22, 2016 NOR DID THE COURT VIOLATE FATHER'S EQUAL PROTECTION UNDER THE LAW.

"In reviewing a custody order, an appellate court is not bound by findings of fact made by the trial court which are *unsupported* in the record, nor is it bound by the court's inferences drawn from the facts." C.W. v. K.A.W., 774

11

A.2d 745, 748 (Pa. Super. Ct. 2001)(internal citations omitted)(emphasis added). "Only where it finds that the custody order is *manifestly unreasonable* as shown by the evidence of record will an appellate court interfere with the trial court's determination." Id. (emphasis added). Thus, "unless the trial court's ruling represents a *gross abuse of discretion*, an appellate court will not interfere with its order awarding custody." Id. (emphasis added).

"The paramount concern in a child custody case is the best interest of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. Id. (quoting, E.A.L. v. L.J.W., 662 A.2d 1109, 1112 (1995)). The Superior's Court "interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough..." Robinson v. Robinson, 645 A.2d 836, 538 Pa. 52, 57 (1994)(internal citations omitted).

"The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it." McMillen v. McMillen, 602 A.2d 845, 847(1992)(internal citations omitted). However, "this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination." Id. Thus, "an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the

trial court's factual findings; and thus, represent a gross abuse of discretion." Id.

"The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. Ct. 2011). "The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors." M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. Ct. 2013).

In the current case, the Court placed its Findings of Fact on the record at the conclusion of the two-day trial. See, N.T. April 21, 2016 at 5-21. The Court methodically went through all 16 Custody Factors and articulated the basis for its award of custody. The parties cannot dictate the amount of weight the trial court places on evidence. S.M. v. J.M., 811 A.2d 621, 623 (Pa. Super. 2002) (quoting Robinson v. Robinson, 538 Pa. 52, 645 A.2d 836, 838 (1994)).

Father argues in his Concise Statement that this Court erroneously weighed some evidence more than other evidence. Specifically, Father argues that the Court's decision was based largely upon economic factors, while completely dismissing this Court's stated concerns about Father's then current living conditions based upon evidence presented at trial about the negative impact Father's living conditions had on the children. This Court addressed

Father's living situation under the fourth Custody Factor regarding stability and stated the following:

> **Court:** I am troubled by dad's living situation right now. All the children crowded into one room with two boys sharing the bed, with ███████ not having her own space, that's very troubling, and while that may not be unstable, I think it is probably unhealthy, and your counsel has addressed it, and we've discussed it. I think that it is something you need to address because that – the need for the children to have an appropriate living situation, need not be grand, but certainly doesn't require a lot of money but just enough to give them a comfortable environment where they can thrive is something that is important.

N.T. April 21, 2016 at 11. This Court also addressed Father's living condition under the tenth Custody Factor, and stated the following:

> **Court:** [Omitted] I would say both parents, but I say that with the caveat that I think father's living accommodations right now are really not competent for creating that kind of needed environment. I think the living conditions are overcrowded and troublesome.

N.T. April 21, 2016 at 15.

The paramount concern of this Court is the best interest of the children, based upon consideration of all factors that legitimately affect the children's physical, intellectual, moral and spiritual well being. After considering all the factors, this Court determined that Father's current living conditions

14

legitimately affect the children's physical, intellectual, moral and spiritual well-being. At no time during the Court's articulation of its Findings of Fact were economic factors taken into consideration.

Father also argues that this Court abused its discretion in concluding that Mother was the parent to more likely promote a relationship with the other parent. This Court, in articulating its reasons for its custody determination, stated that both parties encourage and permit frequent and continuing contact but that Mother may in some instances do it better. (See, N.T. April 21, 2016 at 9). In fact, this Court stated that both parties should be commended for having that kind of cooperative relationship. Id.

Furthermore, Father argues that there was no evidence of record to show that Father's housing was adversely affecting the children. Father lives in a one-bedroom apartment. (N.T. April 6, 2016, at 163). Father testified that he was in the process of looking for a bigger apartment, and that his brother was going to be a co-signer on the lease and his uncle was going to help with the security deposit. (N.T. April 6, 2016 at 163, 164, 194, and 195). Father testified that the two older boys share a bed and that one child has the condition anuresis, which causes him to have accidents during the night. Id. at 196. Father also testified that when a child is sick, that child sleeps in the same room as the other children. Id. at 198.

Additionally, Mother testified as follows on direct examination regarding the effect Father's current living conditions have on the children.

> **Ms. Bobman:** Now, you're seeking primary custody of the four

children. Can you tell me the number one reason why you believe that primary custody with you is in their best interest?

████████ I think right now it is in the kids' best interest because the situation of where they're at with ████ is not ideal for them. The one-bedroom apartment has been an issue for me since it happened. The kids all sleeping in the same room is a problem for me. ████ and ██ sharing a bed is a problem for me. ██████ sleeping with all of her brothers in the same room is a problem for me. And I think that the kids need their own space. I think ██████ needs her room because she's a girl, and I think and have heard that it's hard for the kids –

(Omitted)

**Ms. Bobman:** You can tell us what you observed the children in their actions, but you can't testify about statements that the children made.

████████ Okay. So when the children come – when the children ask me to tell them when they're going to their dad's so they can prepare to be there, they need to get ready to go there. They are very tired when they come home from being there for extended periods of time. When they come back from there, quite frequently the first thing everyone does is disperse into separate places so that everyone can have some time away from everyone else, and then they regroup and come back together as a family. That happens every time that they're there for more than a day.

I know that at our house, one of the issues I worry about for ▮▮▮ is that he has had an incontinence problem that we have taken him to the doctor for, and they said he'll outgrow it, but he is embarrassed about that even in his own room. So I don't know how that is handled or how the kids feel about that being in the same room. That concerns me as well.

**Ms. Bobman:** What about when any of the children are ill, have they been at their father's at any time when they're ill and have had to stay overnight in the same room?

▮▮▮▮▮▮ ▮▮▮ and I have fought illness for the past two months consecutively. It's been a very rare day that one of our kids has not been home from school. It's just been really rough couple of months with the kids being sick and passing it around to each other and going to school and picking up something else. It's just been a bad spring, late winter season for our family and for a lot of families out there, but ours in particular has been hard.

**Ms. Bobman:** So do you believe that the children should be staying in the same room with each other when one of them is ill?

▮▮▮▮▮▮ Ideally I think not. I tried to keep them separate when they are sick, but that's not an option over there. They are together. I think they should be apart when they're sick.

N.T. April 6, 2016, at 42-45.

Based on the evidence presented by Father during direct examination and cross examination, and Mother on direct examination, this Court determined that there was enough evidence of record to show that Father's housing was adversely affecting the children. Moreover, Father acknowledged the legitimacy of the Court's concerns and testified about his specific plans to acquire suitable housing for his family in the very near future.

Father avers that this Court abused its discretion in awarding Mother primary custody when evidence of record showed the marital home was in the process of being sold and that Mother had no definitive plans for a new residence. Mother testified that the marital residence was under short sale with a settlement date of June or July 2016. (N.T. April 6, 2016, at 31). Mother testified that she was in the process of searching for a three-bedroom house with a finished basement. Id. at 45. Additionally, Mother testified that if the martial home sells and she is unable to find a new place to live, then her mother has an extra house in which she would be able to stay at with the children during the summer to give her time to find a new place. Id. at 46. Therefore, there was sufficient evidence of record for the Court to conclude in its discretion that Mother should be awarded primary custody of the minor children until Father was able to obtain the suitable housing he acknowledged was necessary.

Father avers in his Concise Statement that this Court abused its discretion in refusing to grant Father a right of first refusal. Based on the

evidence of record, and as articulated by this Court under Custody Factor Nine, it was determined that the parties are able to co-parent well enough that the right of first refusal was not a necessary element of the Court's Custody Order. The Court did, however, encourage the parties to contact the other party instead of a babysitter or other relative.

Lastly, Father avers that this Court violated his equal protection under the law in requiring Father to obtain housing with a minimum of three (3) bedrooms in order to obtain and have shared physical custody. In her written Order, the Court directed Father to obtain "suitable housing" for himself and the parties' four children. In a discussion on the record, the Court discussed ways to accommodate that requirement. Clearly, from the Court's Findings of Fact and the accompanying discussion, the Court expressed concerns about the need for Father to secure appropriate housing to protect the children's physical and emotional well-being. The Court expressed flexibility in how Father should meet that standard while attempting to offer some guidance to Father about what would be considered suitable.

The Court did not violate Father's equal protection under the law in ordering him to find "suitable housing". Father, by his own testimony, was aware that he needs a bigger living area. The Court stated, "[y]ou need a place for the boys to be, and they each have to have their own bed, and you need a place for ▓▓▓ that gives her privacy." (N.T. April 21, 2016, at 20). While the Court recommended that the definition of suitable housing was a three-bedroom house, (N.T. April 21, 2016, at 20), in her written Custody Order, the

Court directed Father to obtain "suitable housing". This Court's written Custody Order controls, not the notes of testimony.

After hearing testimony and evidence, the Court articulated its Findings of Fact on the record by methodically going through all 16 custody factors as required by law. This Court's conclusions were reasonable based on the evidence of record and reasonable inferences derived from the evidence. Accordingly, this Court did not abuse its discretion and the Custody Order should not be disturbed.

## CONCLUSION

Based on the foregoing reasons, the undersigned respectfully requests that this Court's Support Orders dated April 22, 2016 and May 2, 2016, and this Court's Custody Order dated April 22, 2016, be **AFFIRMED**.

BY THE COURT:

_____
RISA VETRI FERMAN, J.

**Copy of the above Order:**
☒ **Sent via First Class mail to the following:**
Plaintiff's Attorney: Rochelle Bobman, Esq.
Defendant's Attorney: Heather Burns Pozniak, Esq.

☒ **By Interoffice:**
Court Administration: Cheryl Leslie
Domestic Relations

_____
**Judicial Assistant**